COFFEY,
*Appellant,*
*v.*
HILANDS, et al
*Respondents.*

(No. A7606-08989, CA 12889)

600 P2d 466

David D. Powell, Portland, argued the cause for appellant. On the brief was Frank M. Ierulli, Portland.

James H. Gidley, Portland, argued the cause for respondents. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

This wrongful death action arose out of a fatal accident which occurred on a Boy Scout outing. Plaintiff, the mother of the deceased youth and administrator of his estate, appeals the granting of summary judgments for defendants Hilands, Austero and Gomez. She does not appeal the summary judgment for the corporation.

The unchallenged evidence[1] establishes the following facts: On the morning of the fatal mishap, defendant Hilands, scoutmaster of Troop 608, and four or five boys from that troop—including 11-year-old Freddie Smith—joined defendant Gomez, the father of a boy in Troop 635, and two boys from that troop for an overnight outing in the Columbia Gorge. The group left from Multnomah Falls and hiked four and one-half miles to the camp where they were to spend the night. They arrived at approximately 12:30 p.m.

After lunch, Hilands and Gomez led three or four of the boys on a hike to Cougar Rock. Freddie remained at the camp, under the supervision of a 15-year-old scout. The hikers returned between 2 and 2:30 p.m. Sometime later Gomez took several of the boys, including Freddie, on a short walk to a spot known as the "viewpoint," a precipice overlooking the Gorge. At one point Gomez discovered Freddie outside the retaining fence there, throwing rocks over the edge. He admonished Freddie and instructed him not to return to the viewpoint during the remainder of the weekend.

Around the time the group returned from the viewpoint, Freddie discovered two lengths of rope in a woodshed at the camp. He asked Hilands if he could use the rope and some climbing equipment—a waist

---

[1] Defendants argue that the affidavit of plaintiff's counsel, insofar as it contains information which would not be admissible if the affiant took the stand at trial, could not properly be considered on the motions for summary judgment. With that general proposition we agree. *See* ORS 18.105(4). However, we need not determine which portions of the affidavit were objectionable, because our conclusions are the same whether or not that affidavit is considered.

[195]

sling and a carabiner—which Hilands had in his pack to practice techniques Hilands, an experienced mountaineer, had taught him and other scouts during previous outings. Hilands told Freddie it would be all right to practice on a gentle slope near the camp (or in trees located there), which Hilands felt presented little danger. Hilands did not supervise Freddie.

Sometime before 4 p.m., when a first-aid training session was to commence, Hilands noticed that Freddie had returned the climbing equipment to Hiland's pack. Freddie participated in the first-aid lesson. After it was over, Gomez and some of the other scouts hiked down to meet defendant Austero, scoutmaster of Troop 635, who was arriving late because he had worked that day. Hilands told Freddie to remain in the camp area, because it was nearly dinner time.

Freddie took the rope and Hiland's climbing equipment and returned with another scout to the viewpoint. Freddie donned the sling, tied the rope to one of the fence posts and lowered himself over the edge. He successfully descended and ascended once. When he started down a second time, he fell to his death.

Plaintiff stated in her affidavit:

"Prior to my son's death, and for approximately one year, he had been extremely hyperactive, compulsively adventuresome and required strict supervision when engaged in any activities involving danger or potential danger; his enthusiasm and eagerness for adventure often caused my son to act compulsively and he frequently disregarded instructions when they impeded his search for adventure;

"Defendant Hilands had known my son for approximately one year prior to the camp-out at Multnomah Falls on April 26, 1975, and was well aware of these characteristics in my son; ***"

Plaintiff also claimed that by instructing Freddie in the use of ropes and other climbing equipment, Hilands had

"*** inspired in [him] an exaggerated interest and enthusiasm in activities involving rope climbing. "

In his deposition Hilands testified:

"Q: Had Freddie, prior to this particular time, demonstrated any interest to you to learn these [rope climbing] skills?

"A: Yes.

"Q: Very much so?

"A: Yes.

"Q: Would you say he was very enthusiastic about learning that?

"A: Yes."

■ ORS 18.105 provides that a motion for summary judgment should be granted

"*** if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In considering a defendant's motion for summary judgment in a negligence action, the court does not decide whether, if it were the trier of fact, it would or would not find defendant negligent. Rather, the court should determine whether all reasonable-minded persons would necessarily conclude that defendant was not negligent. The standard is the same as for the granting of a directed verdict or judgment of involuntary nonsuit after plaintiff's case at trial. *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978).

■ With respect to the application of that standard in a negligence action, the Supreme Court has stated:

"[Determination] *** whether an issue is submissible [to the jury] *** [rests] on the assumption that we have sufficient general knowledge of 'the kind of conduct that is deemed acceptable in the community and that, at least at the higher and lower ends of the continuum of that standard, the court can say that the conduct does or does not meet the standard.' " *Kirtland v. Davis,* 276 Or 613, 616, 555 P2d 1262 (1976), quoting from *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 607-08, 469 P2d 783 (1970).

[197]

It has also said:

> "*** [A] nonsuit or directed verdict should be entered only in exceptional cases where, from the facts, reasonable [persons] could draw but one inference and that inference supports the conclusion that defendants were not negligent; or that defendants' negligence was not the factual or legal cause of plaintiff's injury." *James v. Carnation Co.,* 278 Or 65, 69, 562 P2d 1192 (1977).

Furthermore, in reviewing the decision on a motion for summary judgment, we view the facts in the light most favorable to the party opposing the motion, in this case plaintiff. *James v. Carnation Co., supra.*

 Applying those standards, with respect to Hilands, it was error to grant a summary judgment. According to plaintiff, Hilands knew Freddie was "compulsively adventuresome," that he "required strict supervision" and that he "frequently disregarded instructions when they impeded his search for adventure." He also knew that Freddie was keenly interested in rope climbing. He allowed Freddie to use his climbing equipment without supervision earlier in the afternoon of the accident and left the equipment where Freddie had access to it. A jury could find that Hilands was aware there were places nearby where it would be dangerous for Freddie to practice with the rope and other equipment. That Hilands gave Freddie permission to use the equipment only in a particular area (which did not include the viewpoint) and that he told Freddie shortly before the fall that he was to remain in the camp area because dinner time was approaching do not, as a matter of law, absolve Hilands from responsibility. *See Grant v. Lake Oswego Sch. Dist. No. 7,* 15 Or App 325, 515 P2d 947 (1973), *rev den* (1974).

Whether the fatal accident was reasonably foreseeable and whether a reasonably prudent person in Hilands' position would have taken additional precautions to prevent such an accident are issues which should be determined by a jury. Hilands' motion for summary judgment should have been denied. The

judgment for him is reversed and the case remanded for trial.

■ With respect to defendants Gomez and Austero, however, we agree that on the evidence reasonable minds could not draw any fair conclusion but that they were not negligent. Their motions for summary judgment were properly granted.

Affirmed in part; reversed and remanded in part.